**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

MAJOR LEAGUE BASEBALL
PROPERTIES, INC. and CHICAGO CUBS
BASEBALL CLUB, LLC,

     Plaintiffs,

v.

TOUSSIANT STEVENS; STEVE RUSSELL;
RICHARD JEKEL; HOWARD KADET;
PETE GADBERRY; HARRY GIBSON,
individually and d/b/a Offcenter Marketing;
JASON ALSPAUGH, individually and d/b/a
Chi Apparel; LARRY BOISSEAU; BYRON
YABLON; JOHN YABLON; JOSE
VILLAREAL; RAMON RIOS; RICHARD
WELLS; DEESCO PERRIMAN, JR.; and
DOES 1-30,

     Defendants.

Civil Action No. 1:16-cv-09140

**FIRST AMENDED COMPLAINT**

Plaintiffs Major League Baseball Properties, Inc. ("MLBP") and Chicago Cubs Baseball

Club, LLC (the "Cubs" and, together with MLBP, "Plaintiffs") state the following for their First

Amended Complaint against Defendants Toussiant Stevens, Steve Russell, Richard Jekel,

Howard Kadet, Pete Gadberry, Harry Gibson, individually and d/b/a Offcenter Marketing, Jason

Alspaugh, individually and d/b/a Chi Apparel, Larry Boisseau, Byron Yablon, John Yablon, Jose

Villareal, Ramon Rios, Richard Wells, DeEsco Perriman, Jr., and Does 1-30 (collectively,

"Defendants"):

## I.     INTRODUCTION

1.     The Chicago Cubs are among the most famous and beloved clubs in all of

baseball; indeed, in all of American sports. For more than one hundred forty years, fans and the

public have followed the Cubs with a passion rivaled by few other sports franchises. The Cubs are steeped in history and tradition, and fans of the Cubs are die-hard—they devote much of their time and energy to celebrating the Cubs' successes (or bemoaning the Cubs' losses).

2.     The Cubs own numerous distinctive and federally and state registered trademarks, including the famous primary logo, , and the red "C," , that appears on all players' caps, various Cubs designs, and the CUBS word mark, among many others. In addition, the Cubs own substantial trade dress rights in the combination of their iconic blue-and-red color scheme and other indicia associated with the Cubs. The Cubs' trademarks and trade dress are extremely valuable and important; not only are they the visual symbols of the Cubs brand—appearing extensively on television, in newspapers and magazines, on billboards, and on the Internet, including on social media sites—but they are the subject of an extensive sponsorship and licensing program that covers a vast range of goods and services, from clothing to food and from glassware to financial services. Fans and the public regularly seek out and purchase licensed products featuring the Cubs' trademarks and trade dress because of the goodwill associated with the Cubs brand.

3.     The Cubs have been home to forty (40) Hall of Fame players, ninety-six (96) participants in the annual All-Star Game, sixteen (16) National League pennants, six (6) division titles, two (2) Wild Card berths, and two (2) World Series titles. Now, after more than a century without winning a World Series championship, the Cubs recently clinched their division, have the best record of all the Major League Baseball Clubs for the 2016 MLB season, and will enter the Postseason working to break the longest championship drought in all of major American sports. As a result, interest in the Cubs and in products featuring the Cubs' trademarks and trade dress is at an all-time high, and is anticipated to increase dramatically over the coming weeks.

4. Defendants are a group of vendors who are deliberately free riding on the success of the Cubs and trading—without a license or permission—on the substantial goodwill associated with the Cubs' trademarks and trade dress. Not only are Defendants reaping unlawful profits from these unsavory efforts, but also over the past weeks and months, they have flooded Wrigleyville and the Internet with all manner of unlicensed products that brazenly use the Cubs' trademarks and trade dress to dupe unwitting fans and the public into purchasing Defendants' knock-off products.

5. Defendants are well aware of Plaintiffs' rights in their trademarks and trade dress. At least one of the Defendants has even been cited by the Cook County State's Attorney's Office for criminal counterfeiting. Nevertheless, their sale of infringing and counterfeit products has not only continued, but it recently has increased in an effort to capitalize (unlawfully) on the on-field success of the Cubs.

6. Defendants' use of Plaintiffs' distinctive trademarks, many of which are covered by federal and state trademark registrations, and distinctive trade dress is confusing to the public. Defendants' infringement is intentional, willful, and in bad faith, and should cease.

7. Defendants are causing irreparable harm to the consuming public, to the Cubs' and MLBP's legitimate licensees, to MLBP, to the Chicago Cubs Baseball Club, and to the Cubs brand. For this reason, Plaintiffs seek, *inter alia*, a temporary restraining order and a preliminary and permanent injunction to stop Defendants from continuing their unlawful campaign of intentional infringement, especially during the upcoming critical weeks, which include the Postseason.

## II.  **PARTIES**

8.      Plaintiff Major League Baseball Properties, Inc. is a corporation organized and existing under the laws of the State of New York and having its principal place of business at 245 Park Avenue, New York, New York 10167.

9.      Plaintiff Chicago Cubs Baseball Club, LLC is a limited liability corporation organized and existing under the laws of the State of Delaware and having its principal place of business at Wrigley Field, 1060 West Addison Street, Chicago, Illinois 60613.

10.      On information and belief, Defendant Toussiant Stevens is an individual citizen of the State of Illinois, who does business in this district in the vicinity of Wrigley Field.

11.      On information and belief, Defendant Steve Russell is an individual citizen of the State of Illinois, who does business in this district in the vicinity of Wrigley Field and who resides at 1234 S. Troy St., Chicago, Illinois.

12.      On information and belief, Defendant Richard Jekel is an individual citizen of the State of Illinois, who does business in this district in the vicinity of Wrigley Field.

13.      On information and belief, Defendant Howard Kadet (formerly identified as and also known as Defendant Ron Howard) is an individual citizen of the State of Illinois, who does business in this district in the vicinity of Wrigley Field and who resides at 6333 N. Leona Ave., Chicago, Illinois.

14.      On information and belief, Defendant Pete Gadberry is an individual citizen of the State of Illinois, who does business in this district in the vicinity of Wrigley Field.

15.      On information and belief, Defendant Harry Gibson is an individual who does business in this district in the vicinity of Wrigley Field and is doing business as "Offcenter Marketing."

4

16.    On information and belief, Defendant Jason Alspaugh is an individual citizen of the State of Illinois, who does business in this district as "Chi Apparel" through a website at https://shop.spreadshirt.com/ChiApparel.

17.    On information and belief, Defendant Larry Boisseau (formerly identified as Edward Jefferson) is an individual citizen of the State of Illinois, who does business in this district in the vicinity of Wrigley Field and who resides at 721 W. Belmont Avenue, Chicago, Illinois 60657.

18.    On information and belief, Defendant Byron Yablon is an individual citizen of the State of Illinois, who does business in this district in the vicinity of Wrigley Field and who resides at 3812 N. St. Louis Avenue, Chicago, Illinois 60618.

19.    On information and belief, Defendant John Yablon is an individual citizen of the State of Illinois, who does business in this district in the vicinity of Wrigley Field and who resides at 3812 N. St. Louis Avenue, Chicago, Illinois 60618.

20.    On information and belief, Defendant Jose Villareal is an individual citizen of the State of Illinois, who does business in this district in the vicinity of Wrigley Field and who resides at 2846 S. Keeler Avenue, Chicago, Illinois .

21.    On information and belief, Defendant Ramon Rios is an individual citizen of the State of Illinois, who does business in this district in the vicinity of Wrigley Field and who resides at 2733 Highland Avenue, Berwyn, Illinois 60402.

22.    On information and belief, Defendant Richard Wells is an individual citizen of the State of Illinois, who does business in this district in the vicinity of Wrigley Field and who resides at 2131 N. Nordica Avenue, Chicago, Illinois 60707.

23.     On information and belief, Defendant DeEsco Perriman, Jr. is an individual citizen of the State of Illinois, who does business in this district in the vicinity of Wrigley Field.

24.     On information and belief, Defendant Does 1–30 are entities and individuals whose identities and addresses are presently unknown to Plaintiffs and are not presently capable of ascertainment, but who are selling or offering to sell, or will sell or offer to sell, goods that infringe Plaintiffs' intellectual property rights, around and near Wrigley Field in Chicago, Illinois, and on the Internet, and accordingly are or will be subject to the jurisdiction and venue of this Court.[1]

### III.     JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Plaintiffs' related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

26.     This Court has personal jurisdiction over all Defendants because, on information and belief, all Defendants (a) market, distribute, offer for sale, and sell goods that infringe Plaintiffs' intellectual property within the State of Illinois; (b) regularly transact and conduct business within the State of Illinois; and (c) have otherwise made or established contacts with the State of Illinois sufficient to permit the exercise of personal jurisdiction.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District; venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because, on information and belief, all Defendants reside or do business in this District and/or the State of Illinois.

---

[1] Plaintiffs will continue to canvass this public property on game days in an effort to ascertain the identities of Does 1–30 and will promptly amend this pleading to provide the identities of the unknown defendants as soon as reasonably possible.

## IV.     FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.     The Famous Cubs Marks**

28.     The Cubs trace their history back over 140 years. A founding member of the National League of professional baseball, the Cubs are the oldest continuously-operating professional sports team in America still playing in its original city. The Cubs are also Chicago's oldest professional sports team.

29.     Starting long before any use by Defendants of any of the marks at issue in this action, MLBP and the Cubs have extensively and exclusively used a number of inherently distinctive word and design marks that identify and distinguish the Cubs. These word and design marks are listed and depicted in **Exhibit 1** (collectively, the "Cubs Word and Design Marks"), and include the words CUB, CUBS, CUBBIES, and other CUB-formative marks, the letter W, and design marks such as:



30.     <u>The Cubs own numerous federal registrations for the Cubs Word and Design Marks, many of which are incontestable, as well as numerous state registrations.</u> These federal and state registrations are listed in **Exhibit 1**.

31.     Fans and the public—particularly throughout the Chicagoland area—are well aware that the Cubs Word and Design Marks distinguish the Cubs' products and services from

others, and moreover, uniquely identify products bearing any of the Cubs Word and Design

Marks as being associated with or licensed by MLBP and the Cubs.

32.     Starting long before any use by Defendants of any of the marks at issue in this

action, MLBP and the Cubs extensively and exclusively used, on uniforms, signage, licensed

products, and in advertising, the Cubs' distinctive trade dress (the "Cubs Trade Dress"), which

consists of the Cubs' blue-and-red color scheme in combination with other indicia associated

with the Cubs (the "Cubs Indicia"), such as: references to team successes and history (e.g.,

"1908"); geographic references (e.g., Chicago); traditions like the "W" flag, "Hey Hey," and "Go

Cubs Go"; the Cubs uniform designs (depicted in paragraph 30); names or images of famous

Cubs players (e.g., Ernie Banks, Ron Santo, Ryne Sandberg, Anthony Rizzo, Kris Bryant, and

Jake Arrieta), including their jersey images or numbers; names or images of famous Cubs

managers and general managers; broadcast personalities; slogans, sayings, and other word marks

and logos; and imagery related to Wrigley Field (as described in paragraphs 27 and 28).

33.     The Cubs are well known for their home ballpark, historic Wrigley Field, which

opened in 1914, making it the second oldest ballpark in professional baseball. Wrigley Field has

welcomed approximately three million baseball fans per season. The portion of the neighborhood

surrounding Wrigley Field has become known as "Wrigleyville," in honor of the famous

ballpark. The Cubs own and/or license a number of trademarks related to Wrigley Field,

including the WRIGLEY FIELD word mark and the iconic Marquee design depicted below.



34.     In addition to the marquee, Wrigley Field is well known for other distinctive features, such as the distinctive ivy-covered redbrick walls (the ivy is cut out to reveal yellow numbers painted on the walls signifying the distance to home plate) and the trademark green clock atop the famous scoreboard, depicted below:

 

35.     Wrigley Field and its distinctive features are so intertwined with the identity of the Cubs and the Cubs brand that they serve as significant source identifiers for the Cubs.

36.     Uniforms worn by Cubs players are well known and distinctive and incorporate both registered MLB Marks and the Cubs Trade Dress, as depicted below:



37.     Fans and the public—particularly throughout the Chicagoland area—are well aware that the Cubs Trade Dress distinguishes the Cubs' products and services from others, and moreover, uniquely identifies products bearing the Cubs Trade Dress as being associated with or licensed by MLBP and the Cubs. The Cubs Trade Dress and the Cubs Word and Design Marks are referred to collectively as the "Cubs Marks."

**B.     Major League Baseball and Its Famous Marks**

38.     MLBP is owned by the Office of the Commissioner of Baseball and is a licensee of, and acts as agent for, the thirty Major League Baseball Clubs, the Office of the Commissioner of Baseball, and their affiliates and related entities (collectively the "MLB Entities"). In this capacity, MLBP is responsible for, among other things, licensing, protection, and enforcement of the Cubs' and the other MLB Entities' trademarks and trade dress; the licensing of the manufacture, production, and distribution, offering for sale, sale, advertisement, and promotion of goods and services bearing the trademarks and trade dress of the MLB Entities and the Cubs; and the protection and enforcement of rights in such intellectual property.

39.     For decades, starting long before any use by Defendants of any of MLBP's trademarks at issue in this action, MLBP and the MLB Entities have used a number of word trademarks to identify and distinguish the goods and services of Major League Baseball, including: MAJOR LEAGUE BASEBALL®, NATIONAL LEAGUE®, NLCS®, AMERICAN LEAGUE®, ALCS®, FALL CLASSIC®, DIVISION SERIES®, LEAGUE CHAMPIONSHIP SERIES®, NL CHAMPIONS®, NATIONAL LEAGUE CHAMPIONS®, NATIONAL LEAGUE CHAMPIONSHIP SERIES®, WORLD SERIES®, and I LIVE FOR THIS® (collectively, the "MLB Word Marks").

40.     For decades, starting long before any use by Defendants of any of MLB Entities' trademarks at issue in this action, MLBP and the MLB Entities have also used a number of

10

design trademarks to identify and distinguish the goods and services of Major League Baseball, including those depicted below (collectively, the "MLB Design Marks"):

   

41.     The National League logo depicted above is still worn on the right sleeves of the Cubs' road and alternate jerseys.

42.     Additionally, each year for at least the last decade, MLB has also used design trademarks in connection with the MLB All-Star Game, Opening Day, various commemorative days (e.g., Roberto Clemente Day, Jackie Robinson Day, Welcome Back Veterans Day, etc.) and the Postseason to identify and distinguish the goods and services of Major League Baseball, including marks specific to each year's Postseason, including, without limitation, marks for each round of the Postseason and the World Series like those depicted below (collectively, the "Postseason Design Marks"):

  

          

        

43. MLBP owns numerous federal registrations for the MLB Word Marks, MLB Design Marks, and Postseason Design Marks, many of which are incontestable, as shown in the chart attached as **Exhibit 2**.

44. In addition to the federal registrations, MLBP owns numerous state registrations for the MLB Word Marks, MLB Design Marks, and Postseason Design Marks, as shown in the chart attached as **Exhibit 3.**

45. For decades, starting long before any use by Defendants of any of the MLB Entities' trademarks at issue in this action, MLBP and the MLB Entities have also used a number of word marks, design marks, logos, mascots, and/or trade dress elements, including color schemes, stylizations, logos, designs and uniform designs and other indicia to identify and distinguish the goods and services of the 29 MLB Clubs other than the Cubs (collectively, with Cubs Marks, the "MLB Club Marks").

46. The famous Cubs Marks, MLB Word Marks, MLB Design Marks, Postseason Design Marks, and MLB Club Marks are referred to collectively as the "MLB Marks."

47. The MLB Marks serve as primary brand identifiers of the MLB Entities, including the Cubs, and have been used for many years in connection with baseball-related goods and services, and as a part of extensive licensing and sponsorship programs on a wide variety of goods and services relating to and associated with the MLB Entities, including the Cubs.

48. Through its extensive licensing programs, MLBP has licensed hundreds of entities the rights to use the MLB Marks on or in connection with a wide variety of goods, including all manner of apparel (e.g., caps, hats of all kinds, jerseys, sweatshirts, and T-shirts), glassware, plush toys, sporting goods, pennants and flags, paper products, food and beverages,

keychains, and many others. MLBP (nationally) and the Cubs (locally) have also entered into numerous sponsorship arrangements spanning a broad array of industries including food, beverage, apparel, home goods, home improvement, banking, hotels, communications, and automobiles, under which companies are licensed to use the MLB Marks, including the Cubs Marks, in advertising, promotions, and/or on products. Representative examples of uses of the Cubs Marks by the Cubs and their licensees and sponsors are attached as **Exhibit 4**.

49. For decades, and long before any use by Defendants of any of the MLB Marks, MLBP and the Cubs have extensively advertised and promoted goods and services bearing the MLB Marks, including the Cubs Marks, in the Chicagoland area and throughout the United States in magazines and newspapers, on television and radio, on billboards, buses, and other outdoor media, as well as via the Internet and social media. MLBP, the Cubs, and the other MLB Entities, along with their licensees and sponsors, spend millions of dollars annually on such advertising and promotional activities. As one example, MLBP and the Cubs currently have incorporated a number of the MLB Marks, including the Cubs Trade Dress, in a national marketing campaign around two popular Cubs players, Kris Bryant and Anthony Rizzo. A video from this campaign is accessible online at http://mlb.mlb.com/social/bryzzo/index.jsp.

50. The MLB Marks also are prominently featured during the numerous Major League Baseball games and exhibitions that are attended by millions of fans annually and enjoyed by millions more through radio, television, and Internet broadcasts. The MLB Marks also are regularly referenced or depicted in a wide range of news, sports, and other unsolicited third-party media reports.

51. The MLB Marks are nonfunctional and have received voluminous unsolicited media coverage attesting to the fame of the MLB Marks and their association with Plaintiffs.

52.     As a result of MLBP's, the Cubs', and the other MLB Entities' extensive and exclusive use, promotion, advertisement, and licensing of the MLB Marks, including the Cubs Marks, and the public's recognition that the MLB Marks are the primary brand identifiers of the Cubs and the other MLB Entities, the MLB Marks, including the Cubs Marks, are famous and possess significant goodwill of great value to MLBP, the Cubs, and the other MLB Entities.

## C.     Defendants' Unlawful Activities

53.     Despite Plaintiffs' well-established rights in the MLB Marks—and in blatant disregard of those rights and without authorization or approval from Plaintiffs—Defendants are manufacturing, promoting, distributing, offering for sale, and selling goods bearing one or more identical, substantially indistinguishable, or confusingly similar imitations of the MLB Marks ("Infringing Goods").

54.     Defendant Toussiant Stevens is advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below, the first three of which were taken on September 16, 2016 and the fourth of which was taken on September 25, 2016, in the vicinity of Wrigley Field:



55.     Defendant Steve Russell is advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below, which were taken on September 16, 2016, in the vicinity of Wrigley Field:



56.     Defendant Howard Kadet (formerly identified and also known as Ron Howard) is advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, including a counterfeit National League Central Division Champions T-shirt, as reflected in the photographs below, which were taken on September 19, 2016 and September 23, 2016, respectively, in the vicinity of Wrigley Field:



15

57.     Defendant Richard Jekel is advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photograph below, which was taken on September 16, 2016, in the vicinity of Wrigley Field:



58.     Defendant Larry Boisseau (formerly identified as Edward Jefferson) is advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below, the first of which was taken on September 16, 2016 and the remainder of which were taken on September 25, 2016, in the vicinity of Wrigley Field:



  

59.     Defendant Pete Gadberry is advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below, which were taken on September 20, 2016, in the vicinity of Wrigley Field:

  

60.     Defendant Harry Gibson is advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photographs below, which were taken on September 16, 2016, in the vicinity of Wrigley Field:



61.     Defendant Jason Alspaugh is doing business online as "Chi Apparel" is advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods. Representative examples appear below:





62.     Defendants Byron Yablon and John Yablon are advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photograph below, which was taken on September 23, 2016, in the vicinity of Wrigley Field:



63.     Defendant Ramon Rios is advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods, as reflected in the photograph below, which was taken on September 23, 2016, in the vicinity of Wrigley Field:



64. Defendant Jose Villareal is advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods in the vicinity of Wrigley Field, including shirts that incorporate a colorable imitation of the federally registered Wrigley Field Marquee trademark.

65. Defendant Richard Wells is advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods in the vicinity of Wrigley Field, including shirts that incorporate a colorable imitation of the federally registered Wrigley Field Marquee trademark.

66. Defendant DeEsco Perriman is advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods in the vicinity of Wrigley Field, including hats that incorporate a colorable imitation of the federally registered C mark and Cubs design mark.

67. On information and belief, all of the Doe Defendants advertise, market, distribute, offer for sale, and/or sell Infringing Goods on public property in the vicinity of Wrigley Field, without authorization or approval from Plaintiffs. On information and belief, the Doe Defendants do not maintain fixed storefronts or permanent websites; instead, they promote, distribute, offer for sale, and sell Infringing Goods in temporary structures on days when the Cubs are playing a baseball game or exhibition at Wrigley Field. Accordingly, it is possible to locate and identify the Doe Defendants only during the hours immediately before, during, and after home games at Wrigley Field.

68. Representative examples of Infringing Goods being advertised, marketed, distributed, offered for sale, and/or sold by the Doe Defendants appear below:









69. The Infringing Goods distributed, offered for sale, and sold by Defendants have not been manufactured, licensed, authorized, sponsored, endorsed, or approved by Plaintiffs, and Defendants are not associated, affiliated, or connected with Plaintiffs, or licensed, authorized, sponsored, endorsed, or approved by Plaintiffs in any way.

70. The Infringing Goods are similar to and compete with goods sold by Plaintiffs and their affiliates, and on information and belief, the parties' respective goods are sold through identical channels of trade.

71.    Many of the Infringing Goods bear spurious designations that are identical to or substantially indistinguishable from the MLB Marks and are, therefore, counterfeit.

72.    All of the Infringing Goods bear designs, color schemes, and/or trademarks that are substantially and confusingly similar to one or more of the MLB Marks.

73.    The Infringing Goods incorporate the Cubs Trade Dress, in that they feature a combination of the Cubs' blue-and-red color scheme with identical, substantially indistinguishable, and/or confusingly similar imitations of the MLB Marks and/or Cubs Indicia as described in paragraphs 26 through 30 above.

74.    Defendants' manufacture, distribution, promotion, offer for sale, and sale of the Infringing Goods and use of identical, substantially indistinguishable, and/or confusingly similar imitations of the MLB Marks is likely to deceive, confuse, and mislead actual and prospective purchasers before, during, and after purchase into believing that the Infringing Goods are manufactured, licensed by, authorized by, or in some manner associated with Plaintiffs, which they are not.

75.    On information and belief, Defendants were very familiar with the MLB Marks and Plaintiffs' rights in them when Defendants began advertising, marketing, distributing, offering for sale, and/or selling Infringing Goods.

76.    On information and belief, Defendants were aware or should have been aware that the sale of the Infringing Goods would likely cause confusion among consumers and would dilute Plaintiffs' rights in the MLB Marks. Indeed, on information and belief, Defendants knowingly, willfully, intentionally, and maliciously adopted and used substantially indistinguishable and confusingly similar imitations of the MLB Marks to mislead and deceive consumers into believing they are put out by or authorized or licensed by Plaintiffs, and to free-

ride and otherwise trade on the enormous goodwill and favorable reputation of Plaintiffs embodied in the MLB Marks.

77.     Defendants have acted in bad faith, with malicious intent, and in knowing disregard of Plaintiffs' rights.

78.     The likelihood of confusion, mistake, and deception engendered by Defendants' misappropriation of the MLB Marks is causing irreparable harm to the goodwill symbolized by the MLB Marks and the reputation for quality that they embody.

79.     The likelihood of confusion, mistake, and deception engendered by Defendants' misappropriation of the MLB Marks is particularly damaging with respect to those persons who perceive a defect or lack of quality in the Infringing Goods.

80.     Upon information and belief, by virtue of their unlawful conduct, Defendants have made profits and gains to which they are not entitled in law or equity.

## FIRST CLAIM FOR RELIEF
### Counterfeiting

81.     Plaintiffs repeat and incorporate by reference the allegations in the preceding paragraphs.

82.     Defendants have used in commerce marks that are identical to, or substantially indistinguishable from, the federally registered MLB Marks, in connection with goods falling within the scope of Plaintiffs' federal registrations.

83.     Defendants' actions demonstrate an intentional, willful, and malicious intent to counterfeit the federally registered MLB Marks in violation of 15 U.S.C. § 1116(d).

84.     Because Defendants have caused, and are likely to continue causing, substantial injury to the public and to Plaintiffs for which Plaintiffs have no adequate remedy at law, and because this is an exceptional case, Plaintiffs are entitled to statutory damages and reasonable

attorneys' fees under 15 U.S.C. § 1117(c), as well as seizure of the Infringing Goods under 15 U.S.C. § 1116.

### SECOND CLAIM FOR RELIEF
**Federal Trademark Infringement**

85.     Plaintiffs repeat and incorporate by reference the allegations in the preceding paragraphs.

86.     Defendants have used marks confusingly similar to the federally registered MLB Marks in violation of 15 U.S.C. § 1114.

87.     Defendants' use of confusingly similar imitations of the federally registered MLB Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the Infringing Goods are manufactured or distributed by Plaintiffs, or are associated or connected with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs.

88.     Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among members of the trade and public, and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by the federally registered MLB Marks, for which Plaintiffs have no adequate remedy at law.

89.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the federally registered MLB Marks to Plaintiffs' great and irreparable harm.

90.     Because Defendants have caused and are likely to continue causing substantial injury to the public and to Plaintiffs, and because this is an exceptional case, Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## THIRD CLAIM FOR RELIEF
### Federal Unfair Competition

91. Plaintiffs repeat and incorporate by reference the allegations in the preceding paragraphs.

92. Plaintiffs' use of the MLB Marks and confusingly similar imitations of the MLB Marks has caused and is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the Infringing Goods are manufactured or distributed by Plaintiffs, or are affiliated, connected, or associated with Plaintiffs, or have the sponsorship, endorsement or approval of Plaintiffs.

93. Defendants have used false designations of origin, false or misleading descriptions of fact, and false or misleading representations of fact in violation of 15 U.S.C. § 1125(a). Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among members of the trade and public, and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by the MLB Marks, for which Plaintiffs have no adequate remedy at law.

94. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the MLB Marks to the great and irreparable injury of Plaintiffs.

95. Because Defendants have caused, and are likely to continue causing, substantial injury to the public and to Plaintiffs, and because this is an exceptional case, Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

## FOURTH CLAIM FOR RELIEF
### Federal Trademark Dilution

96.     Plaintiffs repeat and incorporate by reference the allegations in the preceding paragraphs.

97.     For decades, Plaintiffs have exclusively and continuously promoted and used the MLB Marks throughout the United States. These marks thus became nationally famous and well-known symbols of Plaintiffs well before Defendants offered the Infringing Goods for sale.

98.     Defendants are making use in commerce of marks that dilute or are likely to dilute the distinctiveness of the MLB Marks by eroding the public's exclusive identification of the MLB Marks with Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the MLB Marks, and otherwise lessening the capacity of the MLB Marks to identify and distinguish Plaintiffs' goods.

99.     Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the MLB Marks or to cause dilution of the MLB Marks to the great and irreparable injury of Plaintiffs.

100.     Because Defendants have caused, and are likely to continue causing, irreparable injury to Plaintiffs' goodwill and business reputations and dilution of the distinctiveness and value of the MLB Marks in violation of 15 U.S.C. § 1125(c), and because this is an exceptional case, Plaintiffs are entitled to injunctive relief and to Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116 and 1117.

## FIFTH CLAIM FOR RELIEF
### State Trademark Infringement

101.    Plaintiffs repeat and incorporate by reference the allegations in the preceding paragraphs.

102.    Defendants have used marks confusingly similar to the MLB Marks that are registered with the State of Illinois in violation of 765 ILCS 1036/60.

103.    Defendants' use of confusingly similar imitations of the MLB Marks that are registered with the State of Illinois is likely to cause confusion, deception, and mistake by creating the false and misleading impression that the Infringing Goods are manufactured or distributed by Plaintiffs, or are associated or connected with Plaintiffs, or have the sponsorship, endorsement, or approval of Plaintiffs.

104.    Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and deception among members of the trade and public, and, additionally, injury to Plaintiffs' goodwill and reputation as symbolized by the MLB Marks that are registered with the State of Illinois, for which Plaintiffs have no adequate remedy at law.

105.    Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the MLB Marks that are registered with the State of Illinois to Plaintiffs' great and irreparable harm.

106.    Because Defendants have caused and are likely to continue causing substantial injury to the public and to Plaintiffs, and because Defendants did so knowingly and in bad faith, Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 765 ILCS 1036/70.

## SIXTH CLAIM FOR RELIEF
### State Trademark Dilution

107.     Plaintiffs repeat and incorporate by reference the allegations in the preceding paragraphs.

108.     For decades, Plaintiffs have exclusively and continuously promoted and used the MLB Marks throughout the United States, including the State of Illinois. These marks thus became famous and well-known symbols of Plaintiffs in the United States and each State therein, including the State of Illinois, well before Defendants offered the Infringing Goods for sale.

109.     Defendants are making use in commerce of marks that dilute and are likely to dilute the distinctiveness of the MLB Marks by eroding the public's exclusive identification of the MLB Marks with Plaintiffs, tarnishing and degrading the positive associations and prestigious connotations of the MLB Marks s, and otherwise lessening the capacity of the MLB Marks to identify and distinguish Plaintiffs' goods.

110.     Defendants are causing and will continue to cause irreparable injury to Plaintiffs' goodwill and business reputations and dilution of the distinctiveness and value of Plaintiffs' famous and distinctive marks in violation of the Illinois anti-dilution statute, 765 ILCS 1036/65.

111.     Because Defendants have caused, and are likely to continue causing, irreparable injury to Plaintiffs' goodwill and business reputation and dilution of the distinctiveness and value of the MLB Marks, and because Defendants willfully intended to trade on Plaintiffs' reputation and to cause dilution of the MLB Marks, Plaintiffs are entitled to injunctive relief and to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 765 ILCS 1036/65 and 765 ILCS 1036/70.

## SEVENTH CLAIM FOR RELIEF
### State Law Unfair and Deceptive Trade Practices

112.    Plaintiffs repeat and incorporate by reference the allegations in the preceding paragraphs.

113.    Defendants have been and are passing off their goods as those of Plaintiffs, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Defendants' goods, causing a likelihood of confusion as to Defendants' affiliation, connection, or association with Plaintiffs, and otherwise damaging the public.

114.    Defendants' conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices laws of Illinois, 815 ILCS 510/1 *et seq*.

115.    Because Defendants willfully have caused, and are likely to continue causing, irreparable injury to the public and to Plaintiffs, Plaintiffs are entitled to injunctive relief and attorneys' fees under 815 ILCS 510/3.

## EIGHTH CLAIM FOR RELIEF
### Common Law Trademark Infringement and Unfair Competition

116.    Plaintiffs repeat and incorporate by reference the allegations in the preceding paragraphs.

117.    Defendants' acts as described in the preceding paragraphs constitute common law trademark infringement and unfair competition and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of Plaintiffs. Plaintiffs have no adequate remedy at law for this injury.

118. On information and belief, Defendants acted with full knowledge of Plaintiffs' use of, and statutory and common law rights to, the MLB Marks and without regard to the likelihood of confusion of the public created by Defendants' activities.

119. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the MLB Marks to the great and irreparable injury of Plaintiffs.

120. Because of Defendants' acts, Plaintiffs have been damaged in an amount not yet determined or ascertainable. At a minimum, however, Plaintiffs are entitled to injunctive relief, an order for seizure and impoundment, an accounting of Defendants' profits, damages, and costs. Further, in light of the deliberately fraudulent and malicious use of the MLB Marks and confusingly similar imitations of the MLB Marks, and the need to deter Defendants from engaging in similar conduct in the future, Plaintiffs additionally are entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request a temporary restraining order, preliminary and permanent injunction, an order for seizure, impoundment, damages, Defendants' profits, costs, attorneys' fees and any other appropriate relief, as follows:

1. That all Defendants served herein, and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by through or under authority from Defendants, or in concert or participation with Defendants, and each of them, be temporarily, preliminarily, and permanently enjoined from:

   a. manufacturing, distributing, advertising, marketing, offering for sale, or selling the Infringing Goods or any other similar goods;

b.    using the MLB Marks or any other copy, reproduction, colorable imitation, or simulation of the MLB Marks on or in connection with goods;

c.    using any trademark, name, logo, design, or source designation of any kind on or in connection with goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to Plaintiffs' trademarks, trade dresses, names, or logos;

d.    using any trademark, name, logo, design, or source designation of any kind on or in connection with goods that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by Plaintiffs, or are in any way connected or related to Plaintiffs;

e.    using any trademark, name, logo, design, or source designation of any kind on or in connection with goods that dilutes or is likely to dilute the distinctiveness of the MLB Marks;

f.    passing off, palming off, or assisting in passing off or palming off goods as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

g.    during the pendency of this action, erasing, deleting, altering, or destroying the Infringing Goods that are in Defendants' possession, custody, or control;

h.    during the pendency of this action, destroying any documents, electronic files, or business records that pertain to the copying, reproduction,

manufacture, duplication, dissemination, or distribution and/or sale by the Defendants or under the Defendants' authority, including any correspondence (including, but no limited to, electronic mails), sales and supplier or customer journals, ledgers, invoices, purchase orders, inventory control documents, bank records, catalogues, recordings of any type whatsoever, and all other business records and documents believed to concern the manufacture, purchase, advertising, sale, or offering for sale of such infringing copies; and

i. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in paragraphs a–h above.

2. That Plaintiffs and their duly authorized representatives, accompanied by law enforcement agents from any duly authorized law enforcement agency, be empowered and directed, pursuant to the Lanham Act, 15 U.S.C. § 1116, and the general equitable powers of the Court, and subject to appropriate restrictions and on the conditions as set forth in an order of this Court, to seize and sequester in a secure place, pending further hearing, any and all Infringing Goods, together with any cartons, vessels, boxes, or other containers in which such goods are stored, carried, displayed, or transported, or any devices used to produce or reproduce such goods, including, without limitation, silk screens, molds, matrices, heat transfers, or printers, in the possession, custody, or control of any of the Defendants.

4. That Defendants be ordered to cease offering for sale, marketing, promoting, and selling and to recall all products sold under or bearing the MLB Marks, or any identical, substantially indistinguishable, or confusingly similar imitations of the MLB Marks, that are in

Defendants' possession or have been shipped by Defendants or under their authority, to any customer, including, but not limited to, any wholesaler, distributor, retailer, consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's order as it relates to injunctive relief against Defendants;

5.     That Defendants be ordered to deliver up for impoundment and for destruction, all clothing, apparel, bags, boxes, labels, tags, signs, packages, receptacles, advertising, sample books, promotional materials, stationery, or other materials in the possession, custody or under the control of Defendants that are found to adopt, infringe, or dilute any of the MLB Marks or that otherwise unfairly compete with Plaintiffs and their products;

6.     That Defendants be compelled to account to Plaintiffs for any and all profits derived by Defendants from the sale or distribution of the Infringing Goods;

7.     That Plaintiffs be awarded all damages caused by the acts forming the basis of this Complaint;

8.     That based on Defendants' knowing, willful, and intentional use of identical, substantially indistinguishable, or confusingly similar imitations of the MLB Marks, the damages awarded be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a);

9.     That Defendants be required to pay to Plaintiffs the costs and reasonable attorneys' fees incurred by Plaintiffs in this action pursuant to 15 U.S.C. § 1117(a), 765 ILCS 1036/70, and 815 ILCS 510/3;

10.     That Plaintiffs be awarded statutory damages under 15 U.S.C. § 1117(c) for each transaction carried out by Defendants under marks found to be counterfeit marks within the meaning of 15 U.S.C. § 1116(d).

11.     That based on Defendants' willful and deliberate infringement and/or dilution of

the MLB Marks, and to deter such conduct in the future, Plaintiffs be awarded punitive damages;

12.     That Plaintiffs be awarded prejudgment and post-judgment interest on all

monetary awards; and

13.     That Plaintiffs have such other and further relief as the Court may deem just.

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

Dated: September 26, 2016        **RILEY SAFER HOLMES & CANCILA LLP**

By: /s/ Matthew C. Crowl

Matthew C. Crowl
mcrowl@rshc-law.com
Brian O. Watson
bwatson@rshc-law.com
Three First National Plaza
70 W. Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone: (312) 471-8700
Facsimile: (312) 471-8701

**KILPATRICK TOWNSEND & STOCKTON LLP**
R. Charles Henn Jr. (*pro hac vice* pending)
chenn@kilpatricktownsend.com
Jennifer Fairbairn Deal (*pro hac vice* pending)
jdeal@kilpatricktownsend.com
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555
Attorneys for Plaintiffs